**Exhibit A**

# BMW Financial Services NA, LLC - LEASE AGREEMENT
## Motor Vehicle Lease Agreement (Closed End) - California

DEAL# 242750
SIK# HL894654
FORM# 221-48

### 1. PARTIES

| Lessor (Center) Name and Address | Lessee and Co-Lessee Name and Address | Vehicle Garaging Address (if Different) |
|---|---|---|
| LONG BEACH BMW MINI<br>2998 CHERRY AVENUE<br>SIGNAL HILL, CA 90755 | JAWAD JALAL JR<br>5111 HALIFAX RD<br>TEMPLE CITY CA 91780<br>LOS ANGELES COUNTY | For good and valuable consideration, Financial Services is ("Assignor") hereby assigns all rights, title and interest in such Motor Vehicle Lease Agreement ("Lease") dated and described within to BMW Financial Services NA, LLC ("Assignee").<br><br>BMW Financial Services, NA LLC |

**THERE IS NO COOLING OFF PERIOD** California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this lease simply because you change your mind, decided the vehicle costs too much or wish you had acquired a different vehicle. You may cancel this lease only with the agreement of the lessor or for legal cause, such as fraud.

**2. Agreement to Lease** This Motor Vehicle Lease Agreement ("Lease") is entered into between the lessee and co-lessee ( Lessee ) and the lessor ( Lessor ) named above. Unless otherwise specified, "I," "me" and "my" refer to the Lessee and you and your refer to the Lessor or Lessor's assignee. Vehicle refers to the leased vehicle described below. "Assignee" refers to BMW Financial Services NA, LLC ("BMW FS") or, if this box is checked ☐ to Financial Services Vehicle Trust. BMW FS will administer this Lease on behalf of itself or any assignee. The consumer lease disclosures contained in this Lease are made on behalf of Lessor and its successors or assignees.

**3. Date of Lease, Lease Term and Scheduled Maturity Date** This Lease is entered into on __05/10/17__ for the scheduled Lease Term of __36__ months with a Scheduled Maturity Date of __05/09/20__.

### 4. VEHICLE DESCRIPTIONS

| A. Leased Vehicle<br>☒ New ☐ Demo<br>☐ Used | Model Year<br>2017 | Make & Model<br>BMW 540i | VIN<br>WBAJA5C34HG894654 | Odometer<br>14 | Primary ☒ Personal, Family or Household<br>Use ☐ Business, Commercial or Agricultural |
|---|---|---|---|---|---|
| ☐ Telephone | ☐ CD Player | ☐ _____(specify) | ☐ _____ | (specify) | ☐ _____(specify) |

| B. Trade-In | Model Year | Make | Model | Agreed Upon Value | Prior Credit or Lease Balance | Net Trade In Value |
|---|---|---|---|---|---|---|
| | N/A | N/A | N/A | N/A | N/A | 0.00 |

This box is for use by original Lessor and me to memorialize trade in, turn in and other individualized agreements. If none, enter "None" or "N/A". Assignee will not be obligated for agreements disclosed in this box:

```
Lessee agrees that if this lease cannot be assigned by Lessor to a financial
institution with whom it regularly does business on terms acceptable to Lessor,
and Lessor gives notice to Lessee within 10 days, this lease will be rescinded.
Lessee must then return the vehicle to Lessor in good condition and Lessor will
then return all consideration paid.
```

| 5. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized in Section 9) | 6. MONTHLY PAYMENTS | 7. OTHER CHARGES (Not part of my Monthly Payments) | 8. TOTAL OF PAYMENTS (The amount I will have paid by the end of the Lease Term) |
|---|---|---|---|
| $ 4000.00 | My first monthly payment of $771.66 is due on 05/10/17 followed by 35 payments of $771.66 due on the 9TH day of each month. The total of my monthly payments is $27779.76 | A. Disposition Fee (if I do not purchase the Vehicle) $ 350<br>B. N/A $ N/A<br>TOTAL $ 350 | $ 30158.10 |

### 9. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**A. Amount Due at Lease Signing or Delivery**
1. Capitalized Cost Reduction ............................. $ 1583.76
2. First Monthly Payment ................................... $ 771.66
3. Refundable Security Deposit ......................... $ 0.00
4. Initial Title Fees ............................................ $ N/A
5. Initial Registration Fees ................................ $ 117.00
6. Initial License Fees ..................................... $ 158.00
7. Sales/Use Tax ............................................ $ N/A
8. Acquisition Fee (if not capitalized) ................ $ N/A
9. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (if not capitalized) Paid to _____ $ 29.00
10. Sales Tax on Capitalized Cost Reduction .... $ 138.58
11. Document Processing Charge (not a governmental fee)(if not capitalized) ........ $ N/A
12. California Tire Fee ..................................... $ 7.00
13. Theft Deterrent Device ................................ $ N/A
14. Theft Deterrent Device ................................ $ N/A
15. Surface Protection Product .......................... $ N/A
16. Surface Protection Product .......................... $ N/A
17. N/A ............................................................ $ N/A
18. N/A ............................................................ $ N/A
19. N/A ............................................................ $ N/A
20. N/A ............................................................ $ N/A
TOTAL ........................................................... $ 4000.00

**B. How the Amount Due at Lease Signing or Delivery Will Be Paid**
1. Net Trade In Allowance ................................ $ N/A
2. Rebates and Noncash Credits ..................... $ N/A
3. Amount to be Paid in Cash .......................... $ 4000.00
TOTAL ........................................................... $ 4000.00

### 10. MY MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

A. **Gross Capitalized Cost** The agreed upon value of the Vehicle ($ 55000.00) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) (See Section 13 for an itemization of this amount) ................. $ 57145.00

B. **Capitalized Cost Reduction** The amount of any net trade in allowance, rebate, noncash credit, or cash I pay that reduces the Gross Capitalized Cost .... – $ 1583.76

C. **Adjusted Capitalized Cost** The amount used in calculating my Base Monthly Payment .... = $ 55561.24

D. **Residual Value** The value of the Vehicle at the end of the Lease used in calculating my Base Monthly Payment .... – $ 34901.65

E. **Depreciation and any Amortized Amounts** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term = $ 20659.59

F. **Rent Charge** The amount charged in addition to the Depreciation and any Amortized Amounts .... + $ 4884.73

G. **Total of Base Monthly Payments** The Depreciation and any Amortized Amounts plus the Rent Charge ..... = $ 25544.52

H. **Lease Payments** The number of payments in my Lease ÷ 36

I. **Base Monthly Payment** ............................... = $ 709.57

J. **Sales/Use Tax** ........................................... + $ 62.09

K. N/A ............................................................ + $ N/A

L. **Total Monthly Payment** ............................. = $ 771.66

**Early Termination** I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.

**11. Excessive Wear and Use** I may be charged for excessive wear based on your standards for normal use and for mileage in excess of total miles over the scheduled Lease Term of __45,000__ miles, at the rate of __23__ cents per mile.

**12. Purchase Option at End of Lease Term** I have an option to purchase the Vehicle ( as is ) at the Scheduled Termination of the Lease for its Residual Value of $ __34901.47__ The purchase option price does not include official fees, such as those for taxes, title, registration and license tags. See Section 30 for more information.

**Other Important Terms** See the front and back of this Lease for additional information on early termination, purchase options, and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

### 13. ITEMIZATION OF GROSS CAPITALIZED COST

A. Agreed Upon Value of Vehicle as Equipped at the Time of Lease Signing   $ 55000.00
B. Agreed Upon Value of Each Accessory and Item of Optional Equipment Original Lessor Agrees to Add to the Vehicle after Lease signing
   N/A   $ N/A
   N/A   $ N/A
   N/A   $ N/A
   N/A   $ N/A
C. Total Agreed Upon Value of Vehicle   $ 55000.00
D. Initial Title, License & Registration Fees   $ N/A
E. Sales/Use Tax   $ N/A
F. Federal Luxury Tax   $ N/A
G. Sales Tax on Capitalized Cost Reduction   $ N/A

H. Document Processing Charge (not a governmental fee)   $ 80.00
I. Maintenance Agreement   $ 1140.00
J. Mechanical Breakdown Protection   $ N/A
K. Extended Warranty   $ N/A
L. Service Contract   $ N/A
M. Prior Credit or Lease Balance*   $ N/A
N. Electronic Vehicle Registration or Transfer Charge (not a governmental fee)   $ N/A
O. Acquisition Fee   $ 925.00
P. Other N/A   $ N/A
Q. Other N/A   $ N/A
R. Other N/A   $ N/A
TOTAL GROSS CAPITALIZED COST (C through R)   $ 57145.00

*Leave blank unless Lessor has paid prior credit or lease balance

### 14. ESTIMATED OFFICIAL FEES AND TAXES

$ 1790.82   This is an estimate of the total amount I agree to pay for official and license fees, registration, title and taxes (including personal property taxes) over the Lease Term whether included in my Monthly Payment, Amount Due at Lease Signing or Delivery, or separately billed. The actual total of Official Fees and Taxes may be higher or lower, depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. This estimate is based on my Garaging Address and may increase if I move or if tax rates change. For some of these items, you may invoice me after the taxing authority has billed you, sometimes after the lease term ends.

### 15. OPTIONAL PRODUCTS AND SERVICES

I am not required to buy any of the optional products and services listed below. These products and/or services will not be provided unless I check the appropriate box, fill in all necessary information, initial below and I am accepted by the Provider. Because these products and/or services are not provided by the Lessor, I understand that I must pursue all related matters, including refunds, through the listed Provider. By initialing below, I agree that I have received and read a notice of the terms of the product or service and I want to obtain the product or service for the charge shown. A portion of the charge may be retained by Lessor (Dealer)

XX Maintenance Agreement   BMW MAINTENANCE   46   $ 1140.00
Provider N/A   Term (Months) N/A   Charge   N/A   Lessee/Co-Lessee Initials N/A

☐ Mechanical Breakdown Protection
Provider N/A   Term (Months) N/A   Charge   N/A   Lessee/Co-Lessee Initials N/A

☐ N/A
Provider N/A   Term (Months) N/A   Charge   N/A   Lessee/Co-Lessee Initials N/A

**Mileage Allowance/Refund**
45,014   I agree to this Mileage Allowance for the term of this Lease. My Monthly Payment and Residual Value for this Lease have been calculated, in part, by using this Mileage Allowance.

☐ If this box is checked, I have elected a high Mileage Allowance. I may receive a refund of ___ N/A   cents per unused mile for the unused miles between N/A miles and N/A miles, unless (a) the Vehicle is considered a total loss under my insurance coverage due to damage, theft or destruction, (b) I default, (c) I terminate the Lease early, (d) I purchase the Vehicle, or (e) the refund is less than $1. Any refund will be reduced by any amount I owe under this Lease at the Scheduled Termination.

### 16. WARRANTIES

The Vehicle is subject to the following express warranties. If the Vehicle is new, the Vehicle is subject to the standard manufacturer's new vehicle warranty. The Vehicle is also covered by the following, if checked:

☐ Remainder of the standard manufacturer's new vehicle warranty if the Vehicle is not a new vehicle

☐ ___

UNLESS A LESSOR'S WARRANTY IS DISCLOSED ABOVE, LESSOR, TO THE EXTENT PERMITTED BY LAW, (1) MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, AS TO THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES AND (2) MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE. I ACKNOWLEDGE THAT I AM LEASING THE VEHICLE FROM THE LESSOR "AS IS."

### 17. INSURANCE VERIFICATION

I agree to maintain the insurance coverage described in Section 23. I affirm that such insurance is in force on the date of this Lease. I authorize Lessor and its assignees to speak to my insurance agent or company, and any future insurance agents or companies, about my coverage for the Leased Vehicle.

STATE FARM   4891464E0177A
Insurance Company   Policy No   Coverage Verified (Date) Employee's Initials

Agent Name   Address   Phone No

All matters regarding insurance should be sent by e-mail to insuranceinfo@bmwfs.com or faxed to 888-725-8456

### 18. LESSEE NOTICES AND SIGNATURES

In this section 18, I am referred to as "You"

You have the right to return the Vehicle, and receive a refund of any payments made, if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.

THERE IS NO COOLING OFF PERIOD. California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this Lease simply because you change your mind, decided the Vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this Lease only with the agreement of the Lessor or for legal cause, such as fraud.

NOTICE TO LESSEE: (1) Do not sign this Lease before you read it or if it contains any blank spaces to be filled in, (2) You are entitled to a completely filled in copy of this Lease, (3) Warning – Unless a charge is included in this Lease for public liability or property damage insurance payment for that coverage is not provided by this Lease

By signing below, you acknowledge that you have read the front and back of this Lease, and that you have received a completely filled in copy of this Lease

X ___   X ___
Lessee   Lessee

By (Print Name & Title if Corporation)   By (Print Name & Title if Corporation)

## 19. GUARANTY

I jointly and severally guarantee payment and performance of all promises contained in the Lease. Upon default, Lessor may proceed immediately against me without first proceeding against the Lessee. My liability will be unconditional and will not be affected by any settlement, extension, renewal or modification of this Lease whether or not by operation of law. I waive all right to notices of every kind, including rights to demand and presentment. I agree to pay all expenses (including reasonable attorney's fees and legal expenses) you incur if you have to enforce this Guaranty.

**NOTICE TO LESSEE** (1) Do not sign this Lease before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this Lease. (3) Warning– Unless a charge is included in this Lease for Public liability or property damage insurance, payment for that coverage is not provided by this Lease.

By signing below, you acknowledge that you have read all the pages of this Lease, that you have received a completely filled in copy of this Lease

Guarantor's Signature x _____    Guarantor's Signature X _____

Name _____    Name _____

Address _____    Address _____

## 20. LESSOR'S ACCEPTANCE AND ASSIGNMENT

By signing below, Lessor (1) accepts the terms, conditions and obligations of this Lease and (2) assigns all right, title and interest in the Vehicle and this Lease to the Assignee listed in Section 2 above. This Lease, including all amounts to become due under it, and any guaranty, are subject to the provisions of the Dealer Agreement between Lessor and BMW FS.

Lessor Name  LONG BEACH BMW MINI    Signature of Authorized Representative _____

2004 (7/13) (CA)

## MY OBLIGATIONS DURING THIS LEASE

**21. Vehicle Use.** I agree not to use (or permit others to use) the Vehicle (a) in any way that violates the law or the terms of my insurance policy or this Lease, (b) to transport goods or people for hire, lease or rental to others, (c) outside the state where it was first titled for more than 30 days without your prior written consent, or (d) outside the United States, except for less than 30 days in Canada. I will not allow an unlicensed person to operate the Vehicle at any time, or allow any person who is not authorized by me to operate the Vehicle without written permission from you. I will not physically change the Vehicle's body or interior in any way without first getting your written consent.

**22. Vehicle Maintenance, Service, Repairs, and Reconditioning.** I agree to maintain, service, repair, and recondition the Vehicle during the Lease Term with new and genuine manufacturer's original equipment replacement parts as recommended in the Vehicle owner's manual. I will keep complete maintenance records and return them with the Vehicle.

I am responsible for repairs of all collision, accident, and other physical damage that is not a result of normal wear and use. These repairs include, but are not limited to, those necessary to return the Vehicle to its pre-damage condition, including, but not limited to, repairing damage to exterior panels and components, structural components, vehicle safety systems such as airbag systems and seatbelts, and the Vehicle's interior. All repairs must be made with new and genuine manufacturer's original equipment replacement parts. I will discuss these requirements with my insurance company prior to signing my insurance agreement, damage repair estimate, or before authorizing any damage repair work. If I have not had the repairs made before the Vehicle is returned at or before the end of the scheduled Lease Term, I will pay the estimated cost of such repairs to restore the Vehicle to its pre-damage condition, even if the repairs are made after the Vehicle is returned.

If the Vehicle's odometer becomes inoperative or malfunctions, I agree to notify you and have the odometer repaired within 30 days. I agree not to make any alterations that decrease the Vehicle's value or usefulness or that violate the law. If I add non-standard equipment to the Vehicle, I will return it to original manufacturer specifications before the end of the Lease Term. If the non-standard equipment cannot be removed or modified without decreasing the Vehicle's value or usefulness when the Vehicle is returned to you, the equipment will become your property, and I may be billed in accordance with Section 35 below. You may inspect the Vehicle at any reasonable time.

### NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE

**23. Required Insurance.** During the term of this Lease and until I return the Vehicle, I agree to maintain the following types and amounts of primary insurance: (a) personal liability for bodily injury or death to any one person for not less than $100,000 and for any one occurrence for not less than $300,000, (b) property damage liability for not less than $50,000, (c) comprehensive liability, including fire and theft, for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000, (d) collision liability for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000. The coverage will name you as an additional insured and loss payee. I will provide you with at least 30 days advance notice of cancellation. You have the right to endorse my name on any insurance check or settlement you receive. You also have the right to speak to my insurance company about my insurance coverage.

Except to the extent required by the motor vehicle financial responsibility laws of the applicable state or otherwise by law, I acknowledge that you do not extend any of your motor vehicle financial responsibility or provide insurance coverage to me, any authorized additional driver(s), passengers or third parties through this Lease. If valid automobile liability insurance or self-insurance is available on any basis for me, additional authorized driver(s) or any other driver and such insurance or self-insurance satisfies the applicable state motor vehicle financial responsibility law, then you extend none of your motor vehicle financial responsibility. However, if I and any additional authorized driver(s) are in compliance with the terms and conditions of this Lease and if you are obligated to extend your motor vehicle financial responsibility to me, any additional authorized driver(s) or third parties, then your obligation is limited to the applicable state minimum financial responsibility amounts. Unless required by law, your financial responsibility shall not extend to any claim made by any passenger while riding in or on or getting in or out of the Vehicle. Your financial responsibility shall not extend to liability imposed or assumed by anyone under any worker's compensation act, plan or contract.

Except as required by law, you do not provide Personal Injury Protection, No Fault Benefits or Medical Payment Coverage (PIP) or Uninsured/Underinsured Motorist Protection (UM/UIM) through this Lease. If you are required by law to provide PIP and/or UM/UIM, I expressly select such protection in the minimum limits with maximum deductible and expressly waive and reject PIP and/or UM/UIM limits in excess of the minimum limits required by law.

**24. Registration, Titling, and Taxes.** I agree to pay registration, title, license, inspection fees, and other official fees and taxes in connection with the Vehicle when due, including taxes imposed on fees such as, but not limited to, the disposition fee. You may, at your discretion, pay these fees or taxes to protect your interest in the Vehicle. If you pay such fees or taxes on my behalf, I agree to reimburse you when I am billed. If I fail to reimburse you within 60 days after I am billed, then I will pay you a monthly late charge, until the unpaid balance of the fees and taxes has been paid in full. The amount of each such late charge will not exceed 1.5% of the outstanding unpaid balance of the fees and taxes then due, or the maximum amount permitted by law, whichever is less. The remedies described in this Section 24 are in addition to any remedies you may have pursuant to Section 26.

If I move to another location during the Lease Term or if it becomes necessary for you to correct any title or registration deficiencies, or to perfect your interest in the Vehicle, whether as a result of my failure to cooperate or other action or inaction on my part, I agree to pay you a $30 service charge in addition to the actual fees or taxes, unless prohibited by law, to process registration, title and license documents.

**25. Payments, Late Charge, Returned Payment Charge, Fines, and Traffic Tickets.** If you do not receive my total Monthly Payment within 10 days after it is due, I agree to pay a late charge of $30 or 5% of the amount of the payment that is late, whichever is greater, but not to exceed any limit under applicable law. If any payment is returned to you unpaid for any reason, or if any electronic debit authorization is not paid, I agree to pay you a $25 service charge per item when I am billed.

If you receive notice of any third party charges related to the Vehicle (including but not limited to fines, traffic tickets, parking tickets, toll violations, towing fees, storage fees, or repair bills), I will pay you a $30 service charge per item whether or not you pay such third party charges. You may, at your discretion, pay these charges to protect your interest in the Vehicle. If you pay such charges on my behalf, I agree to reimburse you when I am billed. If I fail to reimburse you within 60 days after I am billed, then I will pay you a monthly late charge, until the unpaid balance of such third party charges has been paid in full. The amount of each such late charge will not exceed 1.5% of the outstanding unpaid balance of the third party charges then due, or the maximum amount permitted by law, whichever is less. I further agree to pay you any and all costs you incur associated with my failure to pay such fines, charges or traffic tickets, including legal costs and reasonable attorneys' fees as allowed by applicable law. The remedies described in this Section 25 are in addition to any remedies you may have pursuant to Section 26.

**26. Default and Remedies.** I will be in default under this Lease if:
(a) I fail to make a Monthly Payment when due,
(b) I fail to maintain the required insurance,
(c) I fail to return the Vehicle at the end of the Lease Term,
(d) I fail to keep any of my promises under the Lease,
(e) I abandon the Vehicle,
(f) I or a guarantor become(s) insolvent or die(s),
(g) Any information in my credit application or a guarantor's credit application is false or misleading, or
(h) The Vehicle is subject to or threatened by seizure, confiscation, levy, or other involuntary transfer by governmental, administrative or legal process.

If I am in default, you may do any or all of the following:
(i) Terminate this Lease and my rights to possess and use the Vehicle,
(ii) Take possession of the Vehicle by any method permitted by law,
(iii) Pursue any other remedy permitted by law,
(iv) Dispose of any personal or other property in the Vehicle at the time of repossession if I do not reclaim it within 10 days,
(v) Require that I pay the sum of (1) any past due Monthly Payments, plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under the Lease except Excess Wear and Use and Excess Mileage charges, plus (3) the amount by which the Adjusted Lease Balance (explained in Section 33) exceeds the Realized Value of the Vehicle (Section 34), plus (4) all of your expenses for taking these actions, including but not limited to expenses for repossession, transportation, storage, and/or sale of the Vehicle, plus (5) all fees and costs of collections, including reasonable attorneys' fees, court costs, interest, and other related expenses involving the enforcement of the terms and conditions of the this Lease, the protection or defense of your interest in the Lease or Vehicle and all losses you incur in connection with my default of this Lease whether such action is in law, equity or an administrative remedy. Furthermore, if I do not pay these amounts when you ask, you may charge me interest at a rate not exceeding the highest lawful rate until I pay,
(vi) If the Vehicle has an electronic tracking device, I agree that you may use the device to find the Vehicle.

**27. Vehicle Loss or Damage.** I agree to immediately notify you if the Vehicle is damaged or destroyed in an accident, stolen, abandoned, or taken by a police or other governmental agency. In that event, you reserve the right to terminate this Lease and my liability will either be (a) calculated under Section 28 below, if I am in compliance with my insurance obligations, or (b) calculated under Section 26 above, if I am not in compliance with my insurance obligations. If the Vehicle is stolen or destroyed, another vehicle may be substituted in its place only if you agree to the substitution. You have no obligation to provide a substitution vehicle. If the Vehicle is damaged and you do not terminate this Lease because the Vehicle is reasonably repairable, I agree to make the repairs in accordance with Section 22 above at my expense.

**28. "Gap Amount" Waiver.** If I am in compliance with my insurance obligations under this Lease and the Vehicle is damaged, stolen or destroyed and considered a total loss under my insurance coverage, I will not be obligated to pay you the gap amount (the difference between the Adjusted Lease Balance and the actual cash value of the Vehicle as of the date of loss) if the claim for total loss is actually paid to you by my insurance company. However, I will be obligated to pay any (1) any and all amounts due and owing needed to satisfy my obligations under this Lease (including past due Monthly Payments and any official fees and taxes assessed or billed in connection with this Lease and the Vehicle), plus (2) any amounts (including Monthly Payments) that become due pending receipt of the insurance proceeds, plus (3) the deductible amount under my insurance policy, plus (4) any amounts deducted from the actual cash value of the Vehicle by the insurance carrier. If as of the date of loss I do not have a physical damage insurance policy that complies with the insurance requirements set forth in this Lease, no gap amount waiver applies and the amount of my liability will be determined as set forth in Section 26.

**29. Power of Attorney.** I appoint you, to the extent permitted by law, through your officer or employee, as my attorney in fact. My grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations I owe under this Lease are paid in full. As my attorney in-fact, you can sign on my behalf all Certificates of Ownership, Registration Cards, applications, affidavits, or any other documents required to register and properly perfect your interest in the Vehicle, transfer my entire interest in the Vehicle as part of a repossession and sale, act on my behalf in insurance matters relating to the Vehicle including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf, and cancel any Credit Life, Credit Disability, GAP Coverage, Extended Warranty, or other optional insurance financed under the Lease, and apply the refunded premium or cost to my outstanding balance if I am in default. Should an original power of attorney be necessary to accomplish any of the preceding, I agree to execute a separate identical power of attorney document and provide you with same.

## ENDING MY LEASE

**30. Purchase Option** I have an option to purchase the Vehicle AS IS, WHERE IS. If I want to buy the Vehicle, I will notify you in advance and agree to complete any documents you require for the purchase. I also agree to re-register and re-title the Vehicle at my own expense in my name at the time I purchase it. If I fail to do so, you reserve the right to cancel the registration. At the Scheduled Termination of the Lease, the purchase price will be the Residual Value (Section 10.0). Prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (Section 33). In either case, I agree to also pay any other amounts due or outstanding under the Lease at the time of purchase such as any official fees, unpaid Monthly Payments or late charges.

**31. Vehicle Return** If I do not purchase the Vehicle, I agree to return it to the place you specify with all parts and accessories and in good working order. Upon return, I agree to complete and sign an odometer disclosure statement and a vehicle inspection report, which may be used in determining any excess wear and use and/or excess mileage. If I do not return the Vehicle at the end of my Lease Term, I am in default and will continue to pay an amount equal to the Monthly Payment for each month until the time that I return the Vehicle. Payment of this amount does not give me the right to keep the Vehicle nor does it automatically extend this Lease.

**32. Scheduled Termination of the Lease** Unless I terminate my Lease early or purchase the Vehicle, my Lease will terminate on the Scheduled Maturity Date, at which time, I agree to pay you (a) a $350 Disposition Fee, plus (b) any unpaid Monthly Payments then due and other amounts needed to satisfy my obligations under this Lease, plus (c) any Excess Mileage and Excess Wear and Use charges (Section 11), plus (d) any official fees or taxes assessed or billed in connection with this Lease.

**33. Early Termination of the Lease** I may terminate this Lease at any time by purchasing the Vehicle (Section 30) or by returning the Vehicle to a location selected by you, if I am in full compliance with the Lease and satisfy all of my Early Termination obligations. If I do not purchase the Vehicle, I may choose one of the following options to determine my Early Termination liability:

**Option A** I agree to pay the sum of (1) all remaining Monthly Payments, plus (2) any past due Monthly Payments, plus (3) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease, plus (4) any Excess Wear and Use and Excess Mileage Charges, plus (5) a $350 Disposition Fee. However, should my Early Termination Liability calculated under this Option exceed what I would have owed had I selected Option B, you will waive the difference and my liability will be capped at Option B.

**Option B** I agree to pay the sum of (1) any past due Monthly Payments, plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease except Excess Wear and Use and Excess Mileage charges, plus (3) a $350 Disposition Fee, plus (4) the amount by which the Adjusted Lease Balance (explained below) exceeds the Realized Value of the Vehicle (Section 34).

Under either option, you may apply some or all of my Security Deposit to what I owe and I will remain liable for personal property taxes that may be assessed and/or billed after the Lease terminates.

The "Adjusted Lease Balance" is determined at any given time by subtracting the scheduled Base Monthly Payments earned through the early termination date from the Adjusted Capitalized Cost and adding to the difference the cumulative Rent Charge earned through the early termination date. The Rent Charge is calculated according to the "constant yield method." Under the constant yield method, each month's rent charge is earned in advance by multiplying the constant rate implicit in the Lease times the Adjusted Lease Balance. The Rent Charge calculations are based on the assumption that I and/or will receive the Monthly Payments on the exact due date.

**34. Realized Value of the Vehicle** For the purpose of calculating my Early Termination liability (Section 33), the Realized Value of the Vehicle is (a) the price you receive for the Vehicle upon disposition in a commercially reasonable manner or (b) a price agreed to by you and me in a separate writing. If the Vehicle is a total loss as set forth in Section 27 above, and I am in compliance with my insurance obligations, the amount of any deductible and the proceeds of the settlement of the insurance claim you receive are the "Realized Value." The Realized Value may also be determined by an appraisal of the wholesale value of the Vehicle, which I may obtain, at my own expense from a professional, independent appraiser agreeable to both of us. If I obtain such an appraisal not later than 3 days before the date of scheduled disposition of the Vehicle by you, the appraisal will be the final and binding Realized Value.

**35. Excessive Wear and Use** I agree to pay you the costs of all repairs to the Vehicle that are not the result of normal wear and use, whether or not you actually repair the Vehicle. Excessive wear and use includes, but is not limited to

(a) inoperative electrical or mechanical parts;
(b) dented, scratched, chipped, rusted, pitted, broken or mismatched body parts, paint, vehicle identification items, trim or grill work;
(c) non-functioning, scratched, cracked, pitted or broken glass or lights;
(d) missing equipment, parts, accessories or adornments;
(e) torn, damaged, burned or stained interior;
(f) repair of any damage that makes the Vehicle unlawful or unsafe to drive;
(g) damage due to installation or removal of non-manufacturer, after market or replacement parts;
(h) damage (including damage to the engine) due to failure to maintain the Vehicle in accordance with Section 22, or
(i) tires with tread depth of less than 1/8" remaining at the shallowest point, and/or tires that are not all of the same grade, quantity or quality as those delivered with the Vehicle.

If I fail to pay any excess wear and use, excess mileage or other lease-end charges within thirty days of the due date indicated on my end of lease bill, I will pay you interest on the unpaid balance of these charges at the rate of 18 percent per annum, if permitted by law, or the maximum rate permitted, if less, until paid in full.

I agree to pay state and local taxes that may be due on amounts owed for lease-end charges, including but not limited to excess wear and use and excess mileage fees.

## ADDITIONAL INFORMATION

**26. Indemnification.** I agree to indemnify, defend and hold you harmless from all claims, liabilities, suits, losses, damages and expenses (including attorney's fees and court costs) including, but not limited to, claims concerning the condition, maintenance, use, ownership or operation of the Vehicle, or claims made under the strict liability doctrine.

**37. Refundable Security Deposit.** You may use some or all of my Security Deposit to pay any amount I owe under this Lease at the end of my Lease Term or upon early termination of the Lease. I will not earn any interest on my Security Deposit. After I have paid all my obligations under this Lease, you will refund to me any part of my Security Deposit that is not used to pay what I owe you.

**38. Assignment.** You may assign your interests under the Lease without my consent. I MAY NOT TRANSFER OR SUBLEASE THIS VEHICLE TO A THIRD PARTY OR ASSIGN THE LEASE OR ANY RIGHTS UNDER IT WITHOUT YOUR PRIOR WRITTEN APPROVAL, WHICH YOU MAY WITHHOLD IN YOUR SOLE JUDGMENT.

**39. Notices.** All correspondence and notices will be sent to me at my Billing Address shown on this Lease unless I give you a different address in writing.

**40. Other Terms.** *Waiver.* You may waive or delay enforcement of your rights under this Lease without affecting your rights on future defaults. *Severability.* Any part of this Lease that is not enforceable shall not affect the validity of the remainder of this Lease. *Joint Liability.* If more than one Lessee signs this Lease, each Lessee shall be jointly and severally liable for all obligations under this Lease. *Choice of Law.* Except as may otherwise be provided by law, this Lease will be subject to the laws of the state where I sign it. In the event that both parties agree not to arbitrate in accordance with Section 41 below, any dispute shall be brought in a court located in the state where I signed the Lease. *Entire Agreement.* This Lease describes all agreements between us with respect to the Lease of the Vehicle. All prior agreements, whether oral or in writing, are superseded. *Maintaining Payments.* I may not change or stop any Monthly Payments for any reason, even if I do not receive an invoice, and even if the Vehicle is stolen, destroyed, seized by the government or the court, experiences mechanical problems, or does not satisfactorily perform. *Lessee's Warranties.* I represent that my driver's license and the driver's license of any authorized driver has not been revoked or suspended within the last 5 years. I promise that I have given a true Amount Owed for any vehicle traded in. If the correct Prior Credit or Lease Balance is more than the amount shown in Section 4.B, I agree to pay you the excess amount upon demand. *Personal Property.* Lessor shall not be responsible at any time for any personal property in the Vehicle. *Escheatment.* If for any reason you need to escheat any of my funds to an unclaimed funds department, you may retain such fee as is allowable per state law.

## 41 ARBITRATION CLAUSE

### PLEASE REVIEW - IMPORTANT - AFFECTS OUR LEGAL RIGHTS

**NOTICE** Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial. If a dispute is arbitrated, I will give up my right to participate as a class representative or class member on any Claim I may have against you, including any right to class arbitration or any consolidation of individual arbitrations. Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights you and I would have in court may not be available in arbitration.

"**Claim**" broadly means any claim, dispute or controversy, whether in contract, tort, statute or otherwise, whether preexisting, present or future, between me and you or your employees, officers, directors, affiliates, successors or assigns or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, which arises out of or relates to my credit application, lease, purchase or condition of the Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease). Any Claim shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action. However, Claim does not include any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver set forth below and/or this sentence), all such disputes or controversies are for a court and not an arbitrator to decide. But any dispute or controversy that concerns the validity or enforceability of the Lease as a whole is for the arbitrator, not a court, to decide. In addition, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court. Moreover, this Arbitration Clause will not apply to any Claims that are the subject of (a) a class action filed in court that is pending as of the effective date of this Arbitration Clause in which I am alleged to be a member of the putative class (however, you and I will continue to be bound by any prior Arbitration Clause) or (b) a motion to compel arbitration filed by you against me before the effective date of this Arbitration Clause pursuant to a prior Arbitration Clause (however, you and I will continue to be bound by any prior Arbitration Clause).

**Class Action Waiver.** Notwithstanding any other provision of this Lease or Arbitration Clause, if either you or I elect to arbitrate a Claim, neither you nor I will have the right (a) to participate in a class action, mass action, private attorney general action or other representative action in court or in arbitration, either as a class representative or class member, or (b) to join or consolidate Claims with claims of any other persons. No arbitrator shall have authority to conduct any arbitration in violation of this provision. (Provided, however, that the Class Action Waiver does not apply to any lawsuit or administrative proceeding filed against you by a state or federal government agency even when such agency is seeking relief on behalf of a class of lessees including me. This means that you will not have the right to compel arbitration of any claim brought by such an agency). The Class Action Waiver is material and essential to the arbitration of any Claims between the parties and is nonseverable from this Arbitration Clause. If the Class Action Waiver is limited, voided or found unenforceable, then the Arbitration Clause (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. The parties acknowledge and agree that under no circumstances will a class action be arbitrated.

I may choose the American Arbitration Association ("AAA"), 120 Broadway, New York, NY 10271, www.adr.org, 1 800 778 7879 or JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, 1 800 352-5267 to administer the arbitration. The rules and forms of the AAA and JAMS may be obtained on their websites or by writing to these organizations at the addresses listed above. Either you or I may request an expedited hearing under the applicable rules. If the AAA and JAMS are unable or unwilling to serve as administrator, the parties may agree upon another administrator or, if they are unable to agree, a court shall determine the administrator. No company may serve as administrator, without the consent of all parties, if it adopts or has in place any formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Clause. If the chosen administrator's rules or other provisions of this Lease (including any other arbitration provision relating to this Lease) conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. If a party files a lawsuit in court asserting Claim(s) that are subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim(s) to select an arbitration administrator in accordance with this paragraph and commence the arbitration proceeding in accordance with the administrator's rules and procedures.

Arbitrators shall be attorneys with at least ten years of experience or retired judges and shall be selected pursuant to the applicable rules. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court, nor by state or local laws that relate to arbitration proceedings. The arbitrator will honor statutes of limitation and claims of privilege recognized under applicable law. In determining liability or awarding damages or other relief, the arbitrator will follow the applicable substantive law, consistent with the FAA (Federal Arbitration Act), that would apply if the matter had been brought in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts). The arbitrator may award any damages or other relief or remedies permitted by applicable law including equitable, temporary and/or provisional remedies. The arbitrator shall write a brief explanation of the grounds for the decision. Any arbitration hearing that I attend shall be conducted at a place reasonably convenient to where I reside. Any court having jurisdiction may enter judgment on the arbitrator's award.

In any arbitration that I have commenced against you, if the total amount of my Claim(s) is less than $25,000 (a) you will pay any and all fees of the administrator and/or the arbitrator if I make a written request for you to pay such fees, and (b) you will pay my reasonable attorneys' and expert witness fees and costs if and to the extent I prevail in the arbitration. Moreover, you will always bear any fees and costs (including administrator and arbitrator fees and reasonable attorneys and expert witness fees and costs) that you are required to bear pursuant to the administrator's rules or applicable law. You will not seek reimbursement from me of any fees or costs (including administrator and arbitrator fees and attorneys' and expert witness fees and costs) that you incur on your own behalf or pay on my behalf in connection with the arbitration.

This Lease involves interstate commerce and this Arbitration Clause and any arbitration hereunder shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") and not by any state law concerning arbitration. However, the governing law as to the substantive issues of the Lease and Vehicle shall be the law of the state in which the Lease was executed. The arbitrator's award shall be final and binding on all parties; except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can, within 30 days after the entry of the award by the arbitrator, appeal the award to a three arbitrator panel administered by the administrator. The panel shall reconsider anew any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this arbitration provision to "the arbitrator" shall mean the panel if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the preceding paragraph. Any final decision of the appeal panel is subject to judicial review only as provided under the FAA.

You and I may retain any rights to self help remedies, such as repossession. The exercise of any self-help remedies is not a "Claim" subject to arbitration, nor is any individual action in court by one party that is limited to preventing the other party from using a self help remedy and that does not involve a request for damages or monetary relief of any kind. Neither you nor I waive the right to arbitrate by using self-help remedies. This Arbitration Clause shall survive any termination, payoff or transfer of this Lease, and shall also survive any bankruptcy to the extent consistent with applicable bankruptcy law. If any part of this Arbitration Clause, other than the Class Action Waiver, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

Notwithstanding any other provision for notice contained in the Lease, any arbitration Claim or other notice provided under the rules of the arbitration administrator will be given to you at the following address. If my Claim is against the Lessor, I agree that notice of my Claim will be given to the Lessor at the address specified in Section 1 of this Lease. If my Claim is against the Assignee (designated in Section 2 of this Lease), I agree that notice of my Claim will be given at 5550 Britton Parkway, Hilliard, OH 43026. If my Claim is against both Lessor and Assignee, I agree that both Lessor and Assignee will be notified of my Claim at the addresses indicated herein.